356

REEDY, GUARDIAN, ET AL. *v.* REEDY.

[Nos. 17,911 and 17,972.  Filed April 24, 1951.
Rehearing denied May 25, 1951.]

*Michael F. Fansler,* of Indianapolis; *John Howard Benjamin,* of Paxton, Ill.; and *Moran & Abromson,* of Portland, for appellants.

*Frank P. Jaqua, Robert L. Smith, Keith Fraser;* and *John A. Resler* (of counsel), all of Portland, for appellee.

BOWEN, P. J.—In the court below the appellee, Walter D. Reedy, filed what he entitled as a "Petition for Allowance of Claim" against himself as guardian of his brother, Harvey F. Reedy. In the petition he asked compensation for services rendered by him prior to his appointment as guardian for Harvey F. Reedy, compensation for his services as guardian, and for work and labor performed by him since his appointment, and for an allowance for money advanced prior to his appointment as guardian.

This petition was filed in Probate Cause No. 2517 in such court, the same being the guardianship of Harvey F. Reedy. Harvey F. Reedy appeared specially, and filed a motion to strike out the petition for allowance of claim on the ground that the court lacked jurisdiction to hear and determine the matters involved therein, and also filed exceptions to the reports filed by the guardian.

The court ordered that the petition for services theretofore filed by Walter D. Reedy should be transferred to the civil docket of the court, and that it be entitled Walter D. Reedy vs. Walter D. Reedy, Guardian, and the cause was assigned No. 27147 in the civil docket, and Harvey F. Reedy appeared in the said Cause No. 27147 and requested to be made, and was made, a party defendant. The defendant guardian filed a demurrer, the only ground thereof which is presented here being that the court did not have jurisdiction of the subject-matter. This demurrer was overruled, and both de-

fendants filed an answer in three paragraphs, the first admitting and denying under the rules, and the second pleading the statute of limitations, and the third alleging that the plaintiff was not the real party in interest. Harvey F. Reedy also filed a separate partial answer alleging that plaintiff was not authorized to borrow the money for which a recovery is sought and he also filed a set-off.

Harvey F. Reedy made a request for special findings of facts and conclusions of law, and the cause was submitted to the court for trial. Evidence was heard on different days and concluded. Thereupon, the appellant Davis filed a certified copy of his appointment under date of November 19, 1947, as conservator of the estate of Harvey F. Reedy, an incompetent person, in the State of Illinois and asked leave to intervene as a party defendant, which leave was granted. The court then made special findings of fact and stated conclusions of law. Additional evidence was heard, and the special findings and conclusions were remade and restated.

Judgment was rendered that Walter D. Reedy be allowed the sum of $4,349.86 for services and money advanced prior to his appointment as guardian, which was ordered paid from the guardianship; that he was allowed the additional sum of $650.00 for his services as guardian and that $500.00 be allowed for services for the attorney for the guardianship to be paid from the guardianship. Exceptions to the guardian's reports were overruled, and the reports approved and confirmed. It was further ordered and adjudged that the special findings of fact and conclusions of law and the judgment and order be entered of record in both cases, in the guardianship of Harvey F. Reedy Probate Cause No. 2517 and in Civil Cause No. 27147.

The appellant guardian and appellant conservator filed motions for a new trial which were overruled.

The appeals have been prosecuted from the judgment entered, as set out above in Probate Cause No. 2517 and in Civil Cause No. 27147. The records in such appeals are substantially identical and the two appeals have been consolidated.

We shall first consider the assigned errors that the court erred in transferring on its own motion the claim of Walter D. Reedy pending in the guardianship of Harvey F. Reedy, a person of unsound mind, No. 2517 in the Probate Court to the civil docket for trial giving the same Cause No. 27147 thereof, and that the trial court erred in assuming jurisdiction of the subject-matter, and that the trial court erred in overruling the demurrer of appellant to appellee's petition for allowance of claim and that the court erred in failing to rule on the motion of appellant to strike out appellee's written claim for want of jurisdiction of the subject-matter.

"The practice requires that disputed claims against a ward's estate be presented by a complaint or petition against the guardian in the court having jurisdiction of the ward's estate." *State ex rel. Johnson* v. *Cody, Judge* (1937), 212 Ind. 247, 8 N. E. 2d 971; *Stewart* v. *White* (1909), 44 Ind. App. 87, 88 N. E. 716; and cases cited; *Carter* v. *American Trust Co., Gdn.* (1925), 82 Ind. App. 587, 147 N. E. 158. It is a civil action, to be tried by a court or jury as any other civil action. *State ex rel. Johnson* v. *Cody, Judge, supra; State ex rel. Kist* v. *Ball* (1945), 223 Ind. 512, 518, 62 N. E. 2d 621.

It appears that the petition was filed in the proper court, the circuit court where the guardianship was pending and which had jurisdiction of the ward's estate.

In *Langley* v. *Mayhew et al.* (1886), 107 Ind. 198, 6 N. E. 317, 8 N. E. 157, a contention similar to the one made here was presented. There a matter within the

probate jurisdiction of the court was entered upon the civil docket. The court said:

"The fact that this cause was entered upon the common law docket of the court below, and that all the entries and orders made concerning it were spread upon the common law order-book, is also urged as an objection to the proceedings below. It is true that the circuit courts of the State have a separate and distinct probate jurisdiction, and that this cause belonged to, and was within that jurisdiction. . . . But its being docketed and otherwise treated as an ordinary civil action was an irregularity merely, and at most a harmless error."

We believe that in this case also the placing of the cause upon the wrong docket was likewise an irregularity merely, and did not deprive the court of jurisdiction of the subject-matter. It appears that no one was harmed by the error. The court, upon its attention being called to the matter, transferred the cause to the civil docket. That was within its power to do. 14 Am. Jur., Courts, § 144, p. 353.

Furthermore, Harvey F. Reedy appeared generally to the cause, and both Harvey F. Reedy and Ray R. Davis, the Illinois conservator, asked and were granted leave to become party defendants in such civil cause No. 27147.

Further assignments of error which are asserted and not waived in this appeal are that the court erred in its separate conclusions of law stated upon the special findings of fact, filed on June 18, 1948, and on March 17, 1949; that the court erred in overruling appellants' motions for a new trial filed respectively on June 25, 1948 and March 17, 1949; and that the court erred in overruling appellants' motion to modify the judgment.

Grounds of the motion for a new trial are; that the finding and decision of the court were not sustained by

sufficient evidence and are contrary to law; that the special findings of facts are not sustained by sufficient evidence and are contrary to law; that the damages assessed by the court are excessive, and that the amount of recovery is too large.

The following facts appear: Harvey F. Reedy in whose behalf this appeal is prosecuted, had, at some time prior to 1926, been adjudged to be a person of unsound mind and was committed to the Richmond State Hospital. On December 14, 1926, and under proper proceedings upon the verdict of a jury he was adjudged to have been restored and to be a person of sound mind. There were no further adjudications with reference to his soundness or unsoundness of mind by any court until December 12, 1941, when an action for the appointment of a guardian for him was brought by his brother, and he was adjudged to be of unsound mind on December 13, 1941. Later on January 25, 1945, he was again adjudged of sound mind and capable of handling his own affairs. And then later he was adjudged of unsound mind in the State of Illinois sometime after June 14, 1947.

The petition which was filed by the appellee Reedy for services covered a period from the years 1930 to 1941 and for compensation for services as guardian from 1941 to 1944 and for reimbursements of the balance due for money allegedly advanced prior to his appointment as guardian.

In 1929 the said Harvey F. Reedy returned to Richmond State Hospital for treatment and later in the same year ran away from the hospital and went to the home of his uncle in Arcanum, Ohio, from where he wrote to his brother, the appellee herein, and requested that he arrange for his release from the hospital, which appellee did, and on February, 1930, said Harvey F. Reedy came from Ohio to the home of

Walter D. Reedy in Indiana where he stayed. Harvey F. Reedy was then unmarried, a prior marriage having been terminated by divorce, and he had no living children nor descendants of deceased children. Harvey F. Reedy owned eighty acres of land in Jay County, Indiana.

The appellee made various trips to various places in the procurement of livestock and farming equipment for such farm following the time that Harvey F. Reedy came to the appellee's home in 1930. Appellee continued to look after his affairs and management of the property and assisted Harvey F. Reedy to perform services and employed others to make certain and valuable improvements to such farm, and generally helped his brother, Harvey F. Reedy, in the management of the farm. In January, 1934, Harvey F. Reedy's condition became such that he was obliged to return to Richmond State Hospital for treatment where he remained until the fall of 1934, when he returned to his farm where he remained until September, 1936, when he again returned to Richmond and remained until May, 1937.

In August, 1937, he became ill and came back to the home of his brother, the appellee herein, who cared for him until September, 1937, when he again returned to Richmond State Hospital. In June, 1938, he again returned to Jay County and stayed until March 11, 1939, when he again returned to Richmond and remained until January 25, 1945, when he left and he has since been living in the State of Illinois. During the time said Harvey F. Reedy was in the Richmond State Hospital, the appellee had managed his farm, kept it in repair, put out crops, harvested, and marketed them, fed, looked after, and marketed livestock, advanced money for payments of bills, and kept records of account, the accuracy of which might be subject to some question by the trier of the facts, but not suffi-

ciently erroneous to justify a reversal of this cause by this court. The appellee made arrangements for the various furloughs from Richmond, conveyed him home from the hospital, and on many different occasions cared for him in his own home. The appellee also looked after the payments of the principal and interest on the mortgage on his brother's farm as well as the payment of the taxes.

There is a sharp dispute between the parties to this appeal with reference to whether or not the record shows that the finding of facts is sufficiently supported by evidence showing that the services performed by the appellee were rendered at the special instance and request of the brother, Harvey F. Reedy, under either an express agreement of Harvey F. Reedy to pay therefor or under evidence of circumstances from which the law would imply the promise to pay.

The law is well settled that there can be no recovery for services voluntarily rendered. It must appear that there was an agreement to pay, or there must be evidence of circumstances from which the law must imply a promise to pay. *Hunt* v. *Osborn* (1907), 40 Ind. App. 646, 82 N. E. 933; *Warring* v. *Hill* (1883), 89 Ind. 497.

In the case of *Stewart* v. *White* (1909), 44 Ind. App. 87, 88 N. E. 716, this court after referring to the various statutory provisions for the protection of the insane and their estates stated:

> ". . . These statutory provisions, thus seeking to protect the insane and their estates, together with the community, are scarcely consistent with an intention that any respectable citizen voluntarily, and of his own motion, may take an insane person into his private custody, and so retain said person for two months, and then, upon the appointment of a guardian, through legal forms, may call upon

such guardian for payment for such services out of the estate of the insane person."

The court further stated in such case:

"It is not meant by us to pass upon the question not here presented, whether services rendered by a stranger for the protection of an insane person or his property may not, in some cases, be charged to the insane person's estate. . . ."

The court thereupon lists, among other requirements, that the services must not have been rendered voluntarily.

By reason of the issues raised in this appeal, we must determine in the instant case whether the evidence shows such services rendered by appellee to his brother leads to but one reasonable conclusion that such services were rendered voluntarily, and whether there was any evidence of circumstances from which an agreement to pay for such services, as found by the trial court, could be properly based.

There is evidence in the record supporting the reasonable inference that what appellee did in managing the farm and looking after business matters for Harvey F. Reedy was what Harvey F. Reedy asked him to do. The appellee testified as to conversations he had with Harvey F. Reedy about the management of the farm; that the appellee read the various reports of the farm operations; that in 1938, Harvey said to him, "Well, when I get able I will pay you," referring to certain monies that appellee had advanced. There is evidence that Harvey F. Reedy specifically directed the appellee to take care of numerous business matters for him. This is a case of two adult brothers, and the record shows that recovery was sought for services rendered prior to the appointment of a guardian which covered a period from 1930 to

1941 and that the said Harvey F. Reedy was adjudged to be a person of sound mind in 1926, and that there were no further adjudications with references to his soundness of mind until December 13, 1941; although he was intermittently confined without any adjudication as to the condition of his mind at the Richmond State Hospital during this period. It appears that we have a situation of an adult brother caring for his adult brother, looking after his business and farming interests, sometimes keeping him in his own home, arranging for furloughs from the Richmond Hospital, and looking after business generally for him. These services began as a result of a letter from the said Harvey F. Reedy to the appellee requesting him to arrange for his release from the Richmond Hospital, and to come and get him at his uncle's home in Ohio, and it is shown that the said Harvey F. Reedy specifically directed appellee in a number of instances to take care of business matters for him. The doctrine that these services would be presumed to be gratuitous does not apply to the facts in the case at bar. *Moslander* v. *Moslander's Estate* (1941), 110 Ind. App. 122, 38 N. E. 2d 268; *Wainwright Trust Co.* v. *Kinder* (1918), 69 Ind. App. 88, 120 N. E. 419.

We feel it was entirely proper for the lower court to have concluded that in the performance of such services for Harvey F. Reedy, the appellee was not a volunteer. While it appears by the express findings and conclusions of the trial court that the court evidently based its decision upon the theory of an express contract, and while it might be said that evidence of an express contract does not clearly appear in this case, nevertheless, the evidence in this case is sufficient to support a finding that there was an implied promise on the part of the appellant to pay for such services which is sufficient under our law, and any

error, therefore, of the trial court in holding to the theory of an express contract is harmless.

Appellant further asserts error in the amount of recovery. From a consideration of the services performed by appellee prior to the appointment of a guardian as shown by the record and related herein covering a period of eleven years, as well as the allowance for services and charges made in the guardianship, we hold that, in the light of the evidence, such amount of recovery was not excessive.

The lower court did not err in its conclusions of law stated upon the special findings of fact, and in overruling appellants' motion for a new trial. Judgment affirmed.

Royse, J., not participating.

NOTE.—Reported in 98 N. E. 2d 256.